<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

-------------------------------------------------------- X
IN RE THE APPLICATION OF SEAWOLF  :
TANKERS INC. AND HEIDMAR INC.,   :
              :
              :
REQUEST FOR DISCOVERY PURSUANT :
TO 28 U.S.C. § 1782        :
              :
              :
-------------------------------------------------------- X

      Civil Case No.:  20-Misc._____

      ECF Case

### <u>*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>

COMES NOW, Applicants, Seawolf Tankers Inc. ("Seawolf") and Heidmar Inc. ("Heidmar") (Seawolf and Heidmar collectively "Applicants"), by and through its undersigned counsel, Holland & Knight LLP, and applies for an *ex parte* Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of subpoenas to be served on Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC for documents and the witness testimony of Robert P. Burke (CEO)[1] and Hew Crooks (CFO)[2] as more fully set forth in this Application; the Declarations of Clayton J. Vignocchi, dated August 24, 2020 ("Vignocchi Declaration" or "Vignocchi Decl."), Ravi Jawani, dated August 21, 2020 ("Jawani Declaration" or "Jawani Decl."), and of James Power dated August 24, 2020 ("Power Declaration" or "Power Decl."), as well as exhibits thereto; and the Memorandum of Law submitted contemporaneously with this Application.

---

[1] *See* Power Ex. 8 at p. 49. Robert P. Burke is listed as the CEO of Ridgebury Tankers Holdings; *See also* Vignocchi Ex. 1 (Application for Certificate of Authority filed with the Connecticut Secretary of State), listing Robert P. Burke as CEO, President, and Chairman of Ridgebury Tankers Ltd.

[2] *See* Power Ex. 8 at p. 49. Hew Crooks is listed as the CFO of Ridgebury Tankers Holdings.

Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a foreign proceeding as well as any foreign proceeding that is within reasonable contemplation if the applicant is an interested party to the contemplated proceeding and if the information sought is located within the District.  Such discovery may be in the form of documents obtained or witness testimony from those companies or persons present in the District.

**JURISDICTION AND VENUE**

Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application is for discovery involving documents and information located within the District of Connecticut, and where discovery is relevant and important to assist Applicants in its ongoing and contemplated foreign proceedings.

At all times material herein, Applicant Seawolf was and still is a foreign business entity organized under Marshall Islands law, having its registered address at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960.

At all times material herein, Applicant Heidmar, was and still is a foreign business entity organized under Marshall Islands law, having its registered address at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960.

Despite being Marshall Islands companies whose registered address is listed as Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960, RV4 Fleet Finance LLC, Ridgebury v4 Investments LLC, Ridgebury Kilo LLC, Ridgebury Mike LLC, Ridgebury Juliet LLC, and Ridgebury Lima LLC, have all represented that they have only one place of business, or chief executive office from which each manages the main part of its business, located at 33 Riverside Ave., 3rd Floor, Westport, CT 06880.  (Power Decl. ¶ 25, Power Ex. 3 -

Facility Agreement, Section 18.31 attached to the RIDGEBURY PROGRESS First Preferred Marshall Islands Mortgage, dated March 2, 2018).

Venue in the District of Connecticut is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from corporations Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC and individuals Robert Burke (CEO) and Hew Crooks (CFO) within this District, and the information or documents sought are located in this Jurisdiction.  *See* Power Decl., ¶¶ 4-6.

## **PENDING AND CONTEMPLATED FOREIGN PROCEEDINGS**

Applicants seek discovery with respect to documents and witness testimony located in the United States and in this District for use in the following foreign proceeding(s) (the "Foreign Proceedings"):

(i)     Vessel arrest proceedings pending in the United Arab Emirates ("UAE") against Ridgebury V4 Investments LLC, Ridgebury Mike LLC, and Ridgebury Kilo LLC, wherein a sister vessel owned by an alleged alter ego shell company of Ridgebury Kilo LLC, the contractual counter party of Applicant Seawolf giving rise to the primary claim pending in, Fujairah Federal Court of First Instance (Case No. 562/2020), in which security in the form of a bank guarantee has been posted in the amount of USD 19,700,000 ("UAE Proceeding"); and

(ii)    The reasonably contemplated foreign proceeding in the Republic of the Marshall Islands ("RMI") which will seek relief in the form of an injunction against further dissipation of assets by Applicants' contractual counterparty and those additional alleged alter ego companies and entities which control the disposition of funds received from the sale of vessels including the vessels RIDGEBURY PROGRESS

and RIDGEBURY PURPOSE and/or a receiver who will be appointed to protect the rights of creditors, including Applicants, by exercising supervision and control over any asset sales or transfer of assets and maintain proceeds from such sales under the supervision of the RMI court appointed receiver pending such time as a final judgment is entered.

## RELEVANT FACTS

The facts giving rise to this Application are set forth in detail in the Declaration of James H. Power, dated August 24, 2020 and the Declaration of Ravi Jawani, dated August 21, 2020, as well as the exhibits thereto. The dispute can be briefly summarized as follows:

### Background

The underlying claim arises from an ill-fated voyage of the vessel RIDGEBURY PROGRESS (IMO No. 9180152) (hereinafter "PROGRESS") which suffered repeated breakdowns and serious delays. (Power Decl., ¶ 7). The PROGRESS was at all relevant times owned by the shell company Ridgebury Kilo a Special Purpose Vehicle ("SPV") incorporated in the Republic of the Marshall Islands ("RMI") with a registered address at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960. Ridgebury Kilo is just one entity in a group of companies self-described collectively as the Ridgebury Group or Ridgebury Tankers. The Ridgebury Group consists of approximately 24 entities mostly formed and existing under the laws of the RMI with one or two group entities formed under Delaware law. At the time of this Declaration the Ridgebury Group is believed to consist of the entities reflected in Power Exhibit 8 – Ridgebury Crude Tankers LLC Investor Presentation. (*Id*. at ¶ 8) and those additional entities set forth in the Power Declaration. After the voyage and after receiving numerous complaints in respect to the 11 engine stoppages and off-hire periods resulting

therefrom, the PROGRESS, Ridgebury Kilo's sole asset, was sold on or about July 2, 2020 for approximately $24 million and the proceeds believed to have been promptly dissipated to related interests including equity holders and/or other entities within the Ridgebury Group of companies thereby rendering Ridgebury Kilo insolvent.  Upon information and belief proceeds from the sale were deposited into an account in the name of RV4 Fleet Finance LLC which serves as the joint operating account for three sister vessels.  (*Id*. at ¶ 9).  On information and belief, the proceeds from the sale of the PROGRESS were likely to have been held, possessed or maintained by RV4 Fleet Finance LLC and/or Ridgebury V4 Investments LLC, RT Holdings LLC and/or DnB Bank ASA for a period of time before such funds were further transferred to other affiliated entities, members, shareholders or investors.  (*Id*. at ¶ 10).[3]

By Pool Agreement dated July 31, 2015 between Ridgebury Kilo, Heidmar and Seawolf (hereinafter "Pool Agreement"), Ridgebury Kilo, as Participant, entered the Vessel in the Seawolf Tankers Pool, as Pool Company, that was commercially managed by Heidmar, as Agent.  (*Id*. at ¶ 12, Power Ex. 1 - Pool Agreement, dated July 31, 2015 and Amendments Nos. 1-3 thereof).

Because of this arrangement, Clause IV (B) (3) of the Pool Agreement obligated Ridgebury Kilo to time charter the PROGRESS to Seawolf for an initial period of 6 months after which the Charter Party became evergreen.  (*Id*. at ¶ 13).  By Clause IV (B) (1) of the Pool Agreement Ridgebury Kilo agreed to indemnify and hold Heidmar harmless from all consequences or liabilities in complying with orders given to it.  (*Id*. at ¶ 14).  By a time charter party dated July 31, 2015 between Ridgebury Kilo and Seawolf (hereinafter "Charter Party"), Seawolf time

---

[3] This same process occurred with the sale proceeds of the vessels PRIDE and PIONEER which were completed in Q1 and Q2 2020.  If the fourth and final vessel, the PURPOSE is sold, under the current structure of the Ridgebury Group each of the shell companies that owed each vessel will be rendered asset-less as well as the immediate holding company RV4 Fleet Finance LLC thereby frustrating the expected judgment by Seawolf against Ridgebury Kilo LLC for breach of the charter.  (Power Decl., ¶ 11).

chartered the PROGRESS from Ridgebury Kilo.  (*Id*. at ¶ 15, Power Ex. 2 - Charter Party, dated

July 31, 2015 and Addendum No. 1 and Amendments Nos. 1-3 thereof).

Clause 1 of the Charter Party – Description and Condition of the Vessel – obligated

Ridgebury Kilo to provide to Seawolf a vessel, on delivery and throughout the duration of the

Charter Party, that was fit in every way for service under the Charter Party including but not limited

to:

- in every way fit to carry crude petroleum and/or its products;
- tight, staunch, strong, in good order and condition, and in every way fit for the service, with her machinery, boilers, hull and other equipment (including but not limited to hull stress calculator and radar) in a good and efficient state;
- with tanks, valves and pipelines oil-tight;
- in every way fitted for burning at sea – fuel oil with a maximum viscosity of 380 Centistokes at 50 degrees Centigrade/any commercial grade of fuel oil ("ACGFO") for main propulsion and for auxiliaries in port - marine diesel oil/ACGFO for auxiliaries.

(*Id*. at ¶ 16).

Clause 2 of the Charter Party – Shipboard Personnel and their Duties – obligated Ridgebury

Kilo to, amongst other things, prosecute all voyages with utmost despatch.  (*Id*. at ¶ 17).  Clause 3

of the Charter Party – Duty to Maintain – provides as follows: "Owners shall, whenever the

passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof)

requires steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(a),

exercise due diligence so to maintain or restore the vessel."  (*Id*. at ¶ 18).

Clause 9 of the Charter Party – Payment of Hire – as amended by Amendment No. 2,

directed Seawolf to remit hire payments to Ridgebury Kilo under the Charter Party to an account

in the name of RV4 Fleet Finance LLC (hereinafter "RV4 Fleet") held at DnB Bank ASA situated

in New York, New York.  (*Id*. at ¶ 19).  RV4 Fleet was, and still is, an SPV incorporated in the

RMI with a place of business at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro,

Marshall Islands MH 96960 and is the 100% owner of the shell company Ridgebury Kilo, the borrower under a Facility Agreement dated on or about March 2, 2018, and the holder of a bank account at DNB Bank ASA situated in New York, New York.  (*Id*. at ¶ 20).

RV4 Fleet is also the 100% owner of three other shell SPV's, which are or were the registered owners of other vessels within the Ridgebury Group as follows:

- M/T RIDGEBURY PIONEER owned by Ridgebury Lima LLC ("Ridgebury Lima") from 10 November 2015 until sold 9 May 2018;

- M/T RIDGEBURY PRIDE owned by Ridgebury Juliet LLC ("Ridgebury Juliet") from 19 October 2015 until sold 29 March 2020;

- M/T RIDGEBURY PURPOSE owned by Ridgebury Mike LLC ("Ridgebury Mike") since 16 July 2015 with sale scheduled for September 2020.

(*Id*. at ¶ 21).

Ridgebury V4 Investments LLC (hereinafter referred to as "Ridgebury Investments") was, and still is, an SPV incorporated in the RMI with a place of business at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960 and is the 100% owner of RV4 Fleet.  (*Id*. at ¶ 22).

Along with the PROGRESS, all such vessels (collectively referred to as the "Ridgebury Investments Fleet") were entered with the Seawolf Tankers Pool or placed under Heidmar Management since soon after acquisition in 2015 pursuant to pool agreements on identical terms to the PROGRESS Pool Agreement and time chartered to Seawolf on identical terms to the PROGRESS Charter Party.  Pursuant to the terms of those Charter Parties the pool earnings for all four vessels in the Ridgebury Investment Fleet were from on or about March 5, 2018 remitted to the bank account held by RV4 Fleet at DnB Bank ASA in New York.  Prior to 2018, payments

were made into the account of Ridgebury V4 Investments at DNB Bank ASA in New York. There is no evidence that the SPV's of the Ridgebury Investment Fleet maintained individual bank accounts or had access to funds to pay debts or fund operations rather all earnings from operation of the Ridgebury Investments Fleet were directed to accounts of other entities with the Ridgebury Group potentially rendering Ridgebury Kilo perpetually insolvent having no access to funds or even a bank account to pay claims such as the claim arising from the breach of the Charter in this case. (*Id*. at ¶ 23). Further, by the Facility Agreement dated on or about March 2, 2018, RV4 Fleet, as Borrower, Ridgebury Investments, as Parent Guarantor, and Ridgebury Kilo (along with Ridgebury Lima, Ridgebury Juliet and Ridgebury Mike), as Owner Guarantors, borrowed money from Macquarie Factoring (UK) Limited, which registered first preferred mortgages against the PROGRESS as well as the other three vessel beneficially owned by Ridgebury Investments through RV4 Fleet which owned the individual SPV's for the PURPOSE, PIONEER and PRIDE. (*Id*. at ¶ 24, Power Ex. 3).

Towards the top of the complex corporate ownership structure is RT Holdings LLC, which is a limited liability holding company formed in March 2013 under the laws of the RMI. (*Id*. at ¶ 26). RT Holdings LLC was formed by management and Riverstone Holdings LLC to hold 100% of the ownership in Ridgebury Tankers LLC (a Marshall Islands company) and Ridgebury Crude Tankers LLC (a Marshall Islands company). RT Holdings LLC owns and operates tanker vessels including participating in the ownership and operation of the Very Large Crude carrier fleet consisting (or formerly consisting of the PROGRESS, PURPOSE, PIONEER and PRIDE). (*Id*. at ¶ 27). On June 11 2015, Ridgebury Investments was formed to acquire four VLCC's. (*Id*. at ¶ 28) (Power Ex. 7 – Ridgebury RT-Holdings Consolidated Financial Statements for 2014 and 2015, p. 7). Ridgebury Holdings LLC, a wholly owned subsidiary of RT Holdings, LLC, owns 36% of

Ridgebury Investments, and Ridgebury Holdings LLC directly or through other related entities exercises significant control of Ridgebury Investments, including overall corporate, commercial, operational and administrative management of Ridgebury Investments.  (*Id*. at ¶ 29, Power Ex. 7 at p. 7).

On December 31, 2015, Riverstone Global Energy and Power Fund V (Cayman), L.P. owned 97.148% of RT Holdings, LLC with the remaining 2.852% owned by officers and directors of RT Holdings LLC.  (*Id*. at ¶ 30, Power Ex. 7 at p. 16).  Riverstone Global Energy and Power Fund V (Cayman), L.P. is affiliated with Riverstone Holdings LLC which maintains an office at 712 Fifth Avenue, 36th Floor, New York, NY 10019, United States.  (*Id*. at ¶ 31).  Riverstone Holdings LLC is believed to be the custodian of records of Riverstone Global Energy and Power Fund V (Cayman), L.P. and will have possession, custody and control over records relating to the relationship between the individual companies, in the Ridgebury Group of companies, the solvency of the various entity, distributions of proceeds from sale of vessels including the PROGRESS, PRIDE and PIONEER and soon to be sold PURPOSE.  (*Id*. at ¶ 32)

One of Riverstone Holdings LLC's nominated directors of RT Holdings LLC is paid $150,000 on an annual basis beginning in 2015.  (*Id*. at ¶ 33, Power Ex. 7 at p. 17).  Based on the website of Ridgebury Tankers[4] the Riverstone director believed to serving on the Ridgebury Group Board of Directors as Chairman since 2015 is N. John Lancaster.[5]  (*Id*. at ¶¶ 34-35).

---

[4] Ridgebury Tankers is the trade name used to describe the entire group of companies and the website represents to the public-at-large that Ridgebury Tankers is located in and operated from Westport, Connecticut.  However, it should be noted that according to the Secretary of State for Connecticut the only Ridgebury entity that ever registered to do business in Connecticut was Ridgebury Tankers Ltd., which is, or was, a company incorporated in the Republic of the Marshall Islands. The lobby directory at 33 Riverside Avenue refers only to Ridgebury Tankers (Floor 3) with no further elaboration again suggesting an intentional disregard of corporate formality and separateness.  (Power Decl., ¶ 35, Power Ex. 9).
[5] *See* http://ridgeburytankers.com/about/board-of-directors/ as of August, 2020.  The website of Ridgebury Tankers further confirms that "Ridgebury is owned together by company management and Riverstone." *See* http://ridgeburytankers.com/about/riverstone/.

Additional companies affiliated with the Ridgebury Group of companies[6] have been incorporated in the Republic of the Marshall Islands for the purpose of serving as SPV's or mere holding companies. (*Id*. at ¶ 36). Additional companies that are believed to hold interests in the companies associated with direct and indirect ownership of the PROGRESS and PURPOSE and who have potentially obtained distributions or other forms of payments from earnings and/or proceeds of the sale of the vessels PROGRESS, PIONEER and PRIDE and potential proceeds from the upcoming sale of the PURPOSE are RVL II PRINCIPALS HOLDINGS LLC, RIDGEBURY VL II LLC, RIDGEBURY VL II PRINCIPALS LLC, RIDGEBURY MANAGEMENT PRINCIPALS LLC, RIDGEBURY TANKERS LLC, BURKE TANKERS LTD, RIDGEBURY TANKERS CORP. (*Id*. at ¶ 38).

On or about March 2018, related entities to Ridgebury Kilo guaranteed the debts of other related entities. See Power Ex. 3 - Facility Agreement attached to the RIDGEBURY PROGRESS First Preferred Marshall Islands Mortgage, dated March 2, 2018. During the course of the PROGRESS, PURPOSE, PRIDE AND PIONEER operations where Seawolf or Heidmar was involved, Seawolf has remitted pool earnings to Ridgebury Kilo and Ridgebury Mike into the bank account held by RV4 Fleet at DNB Bank ASA. (*Id*. at ¶ 39, Power Ex. 4 - bank statement recording payments made to RV4 Fleet at DNB Bank ASA). The earnings of the Ridgebury Investments Fleet since at least March 2018 appear to have been comingled and used to fund the operations of the vessels and pay debts relating to the various related party companies and upon information and

---

[6] The Ridgebury Group was formed initially in 2013 through the initial investment of Riverstone Holdings LLC of 200 million which was, in part, used for the acquisition of vessels which were then placed into SPV's. The Ridgebury Group has been self-described to consist of each and every affiliated company under the ownership of members of management and Riverstone Global Energy and Power Fund V (Cayman) L.P. The Ridgebury Group consists of approximately 24 companies of whom are almost exclusively incorporated in the Republic of the Marshall Islands. Ridgebury Management LLC, which is believed to manages all of the Vessel assets on behalf of the individual RMI SPV's appears to be a Delaware company. (Power Decl., ¶ 37, Power Ex. 8 – Ridgebury Crude Tankers LLC/Riverstone Investor Presentation).

belief those funds have been remitted up the corporate chain to related parties and, at present, may have been dissipated outside of the Ridgebury Group including to members and investors. (*Id*. at ¶ 40). In fact, on at least one occasion subsequent to December 31, 2015, the board of Ridgebury Investments approved a distribution of $15,000,000 which was paid to members and/or investors. (*Id*. at ¶ 41, Power Ex. 7 at p. 17). The RT Holdings LLC and subsidiary consolidated audit report was prepared by Deloitte & Touche LLP, 696 East Main Street, Stamford, CT 06901. *Id*.

### The Voyage Giving Rise to the Claims

Pursuant to the terms of the Pool Agreement and the Charter Party, on or shortly after July 31, 2015 the Vessel was delivered by Ridgebury Kilo into the Seawolf Tankers Pool and into the time charter service with Seawolf. (*Id*. at ¶ 42). By a voyage charter party dated November 20, 2019 entered into between Seawolf and Laurel Shipping LLC ("Laurel") the Vessel was sub-chartered to Laurel for the carriage of fuel oil from the US Gulf and/or the Bahamas and/or the Caribbean to West Coast India or Singapore / Japan range. (*Id*. at ¶ 43). Under the aforesaid voyage charter party, on December 28, 2019 Laurel ordered the Vessel to load cargo at St. Croix, U.S. Virgin Islands, and then Freeport, Bahamas. The same day the Vessel tendered Notice of Readiness at St. Croix and loaded 1,487,840.66 bbls of fuel oil from December 28-31, 2019. (*Id*. at ¶ 44). On January 4, 2020 the Vessel arrived at Freeport, Bahamas and tendered Notice of Readiness on arrival. She then loaded a further 1,066,273.75 bbls of fuel oil from January 6-16, 2020. (*Id*. at ¶ 45). On January 16, 2020 three bills of lading for the cargo loaded aboard the Vessel were issued on behalf of the Master / Ridgebury Kilo, with Freepoint Commodities LLC named as shippers and for delivery to the order of Freepoint Commodities Singapore Pte. Ltd (hereinafter collectively referred to as "Freeport") at Singapore and/or Malaysia. (*Id*. at ¶ 46). On January 20, 2020 Laurel issued discharge orders to the Vessel's Master/Owners for cargo delivery

at Malaysia / Singapore, Tanjung Pelapas STS.  (*Id*. at ¶ 47).  On January 24, 2020 the Vessel's Master advised Laurel that all was going well and weather permitting the Vessel's ETA at Singapore, Tanjung Pelapas STS would be the beginning of March. However, the Vessel did not reach Singapore until April 29th, some 50 – 60 days late and after suffering main engine problems that resulted in 11 different stoppages.  (*Id*. at ¶ 48).  The Vessel finally arrived at Huizhou, China on June 18, 2020 where she completed discharge on June 19, 2020.  (*Id*. at ¶ 49).  The Vessel engine problems, stoppages and delays during the voyage were all due to the Vessel's poor state of maintenance and repair in breach of Ridgebury Kilo's Charter Party obligations as aforesaid. (*Id*. at ¶ 50).  Compounding the matter, following the repairs performed during the numerous stoppages, the Vessel was unable to maintain her warranted Charter Party speed of 12.5 knots and instead often proceeded at a speed of between 7 - 9 knots, which constitutes a further breach by Ridgebury Kilo of its Charter Party obligations.  (*Id*. at ¶ 51).  The technical managers and crewing agent of the PROGRESS was Bernhard Schulte Shipmanagement (Singapore) Pte. Ltd., on information and belief, will have contracted directly with Ridgebury Kilo or another entity within the Ridgebury Group.  Payments for services would have been made to Bernhard Schulte Shipmanagement (Singapore) Pte. Ltd. for both technical management and the provision of the crew.  It is believed that comingled funds in the account of RV4 Fleet will have been used to fund expenses and any losses of other SPV's owned by RV4 Fleet.  (*Id*. at ¶ 52).

Due to the aforesaid stoppages, Seawolf and Heidmar have been presented with a demand letter dated July 22, 2020 from counsel for Laurel and Freepoint (the shippers and consignees of the cargo), asserting estimated losses and extra expenses quantified at approximately $19,700,000.00 and alleging breaches by the vessel interests (including Seawolf and Heidmar as contended in the letter) of the voyage charter party and/or the bills of lading (the "Laurel &

Freepoint Claims") and Seawolf and Heidmar have subsequently placed Ridgebury Kilo on notice of the Laurel and Freepoint Claims.  (*Id*. at ¶ 53, Power Ex. 5 – Demand Letter, dated July 22, 2020).

Under English law, which is incorporated into the Ridgebury Kilo's Charter Party, Seawolf has an accrued cause of action against Ridgebury Kilo for breach of, inter alia, Clauses 1, 2 and 3 of the Charter Party and Seawolf claims damages for the losses suffered including any amounts that Seawolf is required to pay in respect of the Laurel Claims.  (*Id*. at ¶ 54).  Seawolf has commenced London arbitration against Ridgebury Kilo claiming, inter alia, damages for the losses caused by Ridgebury Kilo's breaches of the Charter Party and delay in the performance of the voyage and in the delivery of the cargo. (*Id*. at ¶ 55).  Under English law, which governs Ridgebury Kilo's Pool Agreement obligations, Heidmar is entitled to be indemnified and held harmless by Ridgebury Kilo from all consequences and liabilities, including any amounts that Heidmar is held liable to pay in respect of the Laurel Claims.  (*Id*. at ¶ 56).

## The UAE Proceeding

On or about July 29, 2020 the Applicants initiated a vessel arrest action in the Fujairah Court of First Instance in the United Arab Emirates to arrest the vessel PURPOSE and to obtain security for the claims of the Applicants against Ridgebury Kilo LLC.  The arrest of the PURPOSE was sought on the grounds set out in the Commercial Provisional Attachment application before the Fujairah Federal Court of the First Instance, Case No. 562/2020 including that the relationship, dealings and arrangements by and between Ridgebury V4 Investments LLC, Ridgebury Mike LLC and Ridgebury Kilo LLC was such that the PURPOSE should be considered a sister vessel of the vessel RIDGEBURY PROGRESS (IMO No. 9180152) (the "PROGRESS") and liable to be arrested to secure the claims of the Applicants against Ridgebury Kilo under the PROGRESS

Charter Party and Pool Agreement, both dated July 31, 2015.  An arrest order was issued and arrest of the sister vessel PURPOSE was made.  Subsequent to the arrest, Ridgebury Mike LLC filed a Grievance Application No. 585 of 2020 before the Fujairah Federal Court of the First Instance objecting to the Arrest Application 562/2020 and a bank guarantee was posted to secure the release of the PURPOSE preserving the rights of Ridgebury V4 Investments LLC, Ridgebury Mike LLC and Ridgebury Kilo LLC to set aside the arrest order and the guarantee on grounds that Ridgebury Mike LLC could not be held responsible for the debts of Ridgebury Kilo LLC and/or that the vessels could not be considered to be owned by Ridgebury V4 Investments LLC and/or that the arrest of the PROGRESS to obtain security was impermissible.

The matters at issue in the UAE proceeding include whether the registered ownership of the PROGRESS and PURPOSE by SPVs is an artificial device that has been used to shield the ownership of the vessels. The documents lodged with the arrest application and considered by the court expert demonstrate that the ownership and financing of the vessels has been structured through a single corporate entity and that the earnings of the vessels have been commingled through a single bank account. This practice has been followed for a number of years such that the ownership, assets and liabilities of the vessels has become intertwined.

Based on the issues to be addressed in the ongoing UAE proceeding the documents and information requested pursuant to this Application are material to the issues in the foreign proceeding.

Based on the issues to be address in the ongoing UAE proceedings the documents and information requested pursuant to this Application are material to the issues in the foreign proceeding.

(Jawani Decl., ¶ 5).

**Other Contemplated Foreign Proceedings**

An action in the Republic of the Marshall Islands is currently being developed and upon final authorization given by the clients I intend to be file in time to enjoin the dissipation of sale proceeds from the sale of the PURPOSE beyond Ridgebury Group entities, RV Fleet, Ridgebury Investments, RT Holdings or Ridgebury Tankers LLC.  (Power Decl. ¶ 58).  Each and every entity in the Ridgebury Group of Companies including the following entities are incorporated in the RMI and subject to general jurisdiction of the High Court of the RMI: Ridgebury V4 Investments LLC, RV4 Fleet Finance LLC, Ridgebury Holdings LLC, RT Holdings LLC, Ridgebury Management LLC, Ridgebury Kilo LLC, Ridbebury Mike LLC, Ridgebury Juliet LLC and Ridgebury Lima LLC.  (*Id*. at ¶ 59).  Moreover, the following entities are entered as joint entrants under the same insurance policy:   Ridgebury Kilo LLC (Owner); RT Holdings, LLC (Holding company); Ridgebury Holdings LLC (Marshall Islands) (Holding company); Ridgebury V4 Investments LLC (Parent Owner); Ridgebury Management LLC (Manager); Bernhard Schulte Shipmanagement (Singapore) Pte. Ltd. (Technical managers); Bernhard Schulte Shipmanagement (Singapore) Pte. Ltd. (Crewing agent) and Ridgebury Tankers LLC is designated as the group principal.  (*Id*. at ¶ 60, Power Ex. 6 - P&I Certificate of Entry).

Under the law of RMI various forms of pre-judgment relief are available including, but not limited to injunctions and the appointment of a receiver.  The RMI has adopted the general maritime law of the United States, The High Court of the RMI has previously issued pre-judgment injunctions against the sale and transfer of assets including the RMI flagged superyacht LUNA where the Court found that the sale or transfer of title of the LUNA might render the registered owner insolvent or frustrate the ability of a claimant to recover on a later recognized foreign judgement.  The undersigned was counsel of record in the RMI in Case No. 2018-169 where the

pre-judgment injunction was granted and remains in effect today.  (*Id*. at ¶ 61, Power Ex. 10). Here, because all of the relevant entities that have or will possess funds of Ridgebury Kilo, the Applicants' counter party to the PROGRESS Charter Party and Pool Agreement, the RMI is potentially the sole place in the world that would have jurisdiction to issue orders covering each of the Ridgebury Group entities for the preservation of assets pending resolution of the underlying contract claim against Ridgebury Kilo and the claims by Laurel Shipping and/or Freepoint against the Applicants for which Ridgebury Kilo would be responsible for paying.  (*Id*. at ¶ 62).

Rule 65 of the Marshall Islands Rules of Civil Procedure ("MIRCP") governs the issuance of temporary restraining orders and preliminary injunctions.  Injunctive relief may be sought on a pre-judgment basis in order to avoid the transfer of assets pending litigation in the RMI and elsewhere.  (*Id*. at ¶ 63).

The Marshall Islands Rules of Civil Procedure "MIRCP" Rule 66 governs receiverships. Pursuant to Rule 66, a court has the discretion to appoint a receiver.  Among various other elements, under MIRCP 66 the High Court would strongly consider the possibility of irreparable harm when determining the appointment of a receiver.  A movant must make a clear showing that (1) an emergency exists and (2) that a receiver is necessary to protect the property interests of the movant.  Although there is no precise formula for determining whether a receiver should be appointed, a court may consider the following equitable factors:

1)      the probability of the plaintiff's success in the action;

2)      the possibility of irreparable injury to the plaintiff's interests in the property;

3)      the inadequacy of the security to satisfy the debt;

4)      the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;

5)      the financial position of the debtor;

6)      the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

7)      the inadequacy of available legal remedies;

8)      the lack of a less drastic equitable remedy; and

9)      the likelihood that appointing a receiver will do more harm than good.

(*Id*. at ¶ 64).

Under the requirements of MIRCP 66, emergency circumstances can justify the appointment of a receiver over an entity where there is a risk of the transfer of assets and a receiver may be appointed to avert further loss of assets through waste and mismanagement.  (*Id*. at ¶ 65). If the facts of the case show or a colorable claim can be asserted that Ridgebury Kilo is insolvent or has dissipated assets in advance of a potential judgment then a cause of action exists under RMI law that could support an injunction and/or the appointment of a receiver.  Specifically, if it can be shown that one or more of the Ridgebury companies subject to jurisdiction in the RMI have control over funds held for the benefit of Ridgebury Kilo or have received transfers of funds of Ridgebury Kilo prior to or after the sale of the vessel PROGRESS in July 2020 then such entities could be enjoined from further transferring such funds.  (*Id*. at ¶ 66).

The discovery sought is intended and specifically designed to obtain the necessary information to establish patterns of funds transfers by and between the various Ridgebury entities particularly where those funds originated from earnings by Ridgebury Kilo or from the sale of the PROGRESS.  (*Id*. at ¶ 67).

68.    Moreover, obtaining targeted information from Deloitte & Touche and from Ridgebury Tankers (and affiliates entities believed to be located within the District as set forth

above) regarding the financial stability or potentially insolvent status of certain affiliates, financial structure of the Ridgebury Group and payment to members and investors and instructions for inter-company transfers, audit statements, sales agreements and correspondence for the sales of the PRIDE, PIONEER, PROGRESS and PURPOSE, and other financial records for related to its investment in Ridgebury Group entities will be used to draft a well pled complaint seeking various forms of pre-judgment relief available in the RMI including injunction against the sale of the PROGRESS and further distribution of funds from the earning or sale from the sister vessels PURPOSE and PRIDE. (*Id*. at ¶ 68). Granting the assistance requested by Seawolf Tankers LLC and Heidmar Inc. would not offend or constitute a circumvention of foreign proof-gathering rules of the RMI. There is no RMI rule of evidence that would prevent discovery obtained under 28 U.S.C. § 1782 being used in the contemplated RMI Proceeding. (*Id*. at ¶ 69).

## REQUEST FOR DISCOVERY ASSISTANCE

Applicants requests that the Court provide discovery assistance with respect to the Foreign Proceedings, set forth above. Applicants requests that Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC, Robert Burke (CEO) and Hew Crooks (CFO) – which are all present in the District of Connecticut - be directed to provide discovery, described below, for use in the Foreign Proceedings, as well as other proceedings which may later arise as a result of information discovered. As more specifically described in Applicants' Memorandum of Law in Support of this Ex Parte Application for Discovery Pursuant to 28 U.S.C. § 1782, assistance is appropriate here because: Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC, Robert Burke (CEO) and Hew Crooks (CFO) each "resides" at or

is "found" in the district; Applicants are "interested persons" (as parties to the Foreign Proceedings); (iii) the Foreign Proceedings have been or will be commenced before a "foreign or international tribunal"; and (iv) the information obtained will be for use in, and in support of, the Foreign Proceedings.

WHEREFORE, pursuant to 28 U.S.C. § 1782, Applicants Seawolf and Heidmar request that this Court enter an Order:

1. Authorizing Applicants to issue and serve subpoenas on Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, and Ridgebury Management LLC or entities later identified by Ridgebury to be the entity or entities having an office located in Connecticut at 33 RIVERSIDE AVENUE | 3RD FLOOR | WESTPORT, CONNECTICUT 06880, for the production of the following documents:

A.      Documents concerning the sale and receipt of proceeds from the sale of the PRIDE, PIONEER, PROGRESS and PURPOSE, including board approvals, minutes, correspondence and the distribution or dissipations of such sale proceeds within the Ridgebury Group or to investors, members or third parties;

B.      Organization Charts;

C.      Documents evidencing alter ego or supporting veil piercing:

1) Whether a single parent that owns all or most of the capital stock of the subsidiary;

(2) The absence of formalities that are part and parcel of the corporate existence (i.e., the issuance of stock, election of directors, decision making by directors, keeping of corporate records, etc.);

(3) Substantial undercapitalization;

(4) Whether funds are deposited and withdrawn from the corporation for other than corporate purposes (intermingling of parent's and subsidiary's property and accounts);

(5) Overlap in ownership, officers, directors, and personnel;

(6) The existence of common office space, addresses, websites, email stems, logos and telephone numbers;

(7) The amount of business discretion displayed by the allegedly dominated corporation (and whether the subsidiary is described as a "department" or "division" of parent or the subsidiary's business is referred to as the parent's business);

(8) Whether related corporations deal with the dominated corporation at arm's length;

(9) Whether the corporations are treated as independent profit centers, including whether the parent pays the subsidiary's employees or other expenses/losses;

(10) The payment or guarantee of debts of the dominated corporation by other corporations in the group;

(11) Whether the corporation in question has been used by others as if it were its own (usually the case in alter ego scenarios involving one or two individuals);

(12) Whether a subsidiary is financed solely or largely by its parent;

(13) The existence of informal, inter-corporate loan transactions;

(14) The filing of consolidated income tax returns;

(15) Whether a subsidiary's directors act in the interest of the subsidiary rather than of the parent;

(16) Existence of fraud, wrongdoing, or injustice to third parties.

2. Authorizing Applicants to issue and serve subpoenas for deposition testimony on Robert P. Burke (CEO) and Hew Crooks (CFO) concerning the above topics.

3. Directing Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC or entities later identified by Ridgebury to be the entity or entities having an office located in Connecticut at 33 RIVERSIDE AVENUE | 3RD FLOOR | WESTPORT, CONNECTICUT 06880 to produce the documents requested in their respective subpoenas within fourteen (14) days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Connecticut.

4. Directing Robert P. Burke (CEO) and Hew Crooks (CFO) to appear for deposition at the offices of Holland & Knight LLP, One Stamford Plaza, 263 Tresser Boulevard, Suite 1400, Stamford, CT 06901 within fourteen (14) days of service of their respective subpoenas and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Connecticut, or at a date and location mutually agreed upon by the parties.

5. Directing Deloitte & Touche LLP, Ridgebury Tankers Ltd., Ridgebury Tankers LLC, Ridgebury Crude Tankers LLC, Ridgebury Management LLC, Robert Burke (CEO) and Hew Crooks (CFO) or entities later identified by Ridgebury to be the entity or entities having an office located in Connecticut at 33 RIVERSIDE AVENUE | 3RD FLOOR | WESTPORT, CONNECTICUT 06880 to preserve documents and evidence, electronic or otherwise, in their possession, custody or control that contain information potentially relevant to the subject matter of Applicants' document request as listed in this Order.

6.     Retaining jurisdiction over the matter for the purpose of enforcement and assessing any supplemental request for discovery assistance that may be requested by Applicants.

In summary, based on the reasons set forth in this Application; the  Vignocchi Declaration, the Jawani Declaration; the Power Declaration; and the Memorandum of Law; Applicants Seawolf and Heidmar clearly meet the requirements of 28 U.S.C. § 1782, and this Application for the Order should be granted.

Dated:        New York, New York
              August 24, 2020

HOLLAND & KNIGHT LLP

By:___/S/Clayton J. Vignocchi_____
          James H. Power (*Pro Hac Vice* Forthcoming)
          Clayton J. Vignocchi
          Federal Bar No. CT 30404
          HOLLAND & KNIGHT LLP
          31 West 52nd Street
          New York, New York 10019
          Tel: (212) 513-3200
          Fax: (212) 385-9010
          james.power@hklaw.com
          clayton.vignocchi@hklaw.com
          *Attorneys for Applicants*
          *Seawolf Tankers Inc. and Heidmar Inc.*