John D. Kimball
Thomas H. Belknap, Jr.
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Fax: (212) 885-5001
jkimball@blankrome.com
tbelknap@blankrome.com
*Attorneys for Ridgebury Kilo LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re Application of Seawolf Tankers Inc. and Heidmar Inc., <br><br> Request for Discovery Pursuant to 28 U.S.C. § 1782 | 3:20-cv-01294 (PKC) |

**MEMORANDUM OF LAW IN OPPOSITION TO APPLICATION
FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

PRELIMINARY STATEMENT ..................................................................................................1

FACTS ........................................................................................................................................2

ARGUMENT ..............................................................................................................................6

    POINT I    RIDGEBURY KILO HAS STANDING TO CHALLENGE THE § 1782 DISCOVERY APPLICATION ..............................................................6

    POINT II    PETITIONER IS NOT ENTITLED TO DISCOVERY FOR USE IN THE LONDON ARBITRATION ON ITS UNRIPE CONTINGENT INDEMNITY CLAIM ..............................................................................7

    POINT III    PETITIONER DOES NOT NEED THE DISCOVERY FOR USE IN THE UAE TO SUPPORT ITS ARREST CLAIM ........................................11

    POINT IV    PETITIONERS' PURPORTED MARSHALL ISLANDS ACTION FOR INJUNCTION RELIEF OR RECEIVERSHIP IS SPECULATIVE AND MOOT ..........................................................................................12

    POINT V    THE COURT SHOULD EXERCISE ITS DISCRETION TO REJECT THE APPLICATION FOR DISCOVERY ...............................................14

CONCLUSION .........................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of Gorsoan Ltd.*,
    435 F. Supp. 3d 589 (S.D.N.Y. 2020)...................................................................................9

*In re Application of Seawolf Tankers et al.*,
    1:20-mc-00299 (S.D.N.Y.)(PKC) .........................................................................................5

*Petition of Asia Maritime Pacific Ltd.*,
    253 F. Supp. 3d 701 (S.D.N.Y. 2015)................................................................................9, 10

*Bottiglieri Di Na Vigazione SpA v. Tradeline LLC*,
    472 F. Supp. 2d 588 (S.D.N.Y. 2007), *aff'd*, 293 Fed. Appx. 36 (2d Cir. 2008) ......................8

*de Leon v. Clorox Co.*,
    2020 WL 4584204 (N.D. Cal. 2020) .....................................................................................7

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir.1995).....................................................................................................9

*Europema S.A. v. R. Esperian, Inc.*,
    154 F.3d 24 (2d Cir. 1998).................................................................................................7, 8

*In re Guo*,
    965 F.3d 96 (2d Cir. 2020)..................................................................................................7, 8

*In re Hornbeam Corp.*,
    2015 WL 13647606 (S.D.N.Y. 2015) ....................................................................................7

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*,
    2015 WL 3439220 (S.D.N.Y. 2015) ...................................................................................8, 9

*In re Ex Parte Petition of Shagang Shipping Co., Ltd.*,
    2014 WL 1744264 (S.D.N.Y. 2014) .................................................................................10, 14

**Statutes**

28 U.S.C. § 1782............................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Ridgebury Kilo LLC submits this Memorandum of Law in opposition to the Application by petitioners Seawolf Shipping Inc. and Heidmar, Inc. ("Petitioners") for an order granting discovery pursuant to 28 U.S.C. § 1782. (Dkt. No. 1).

Petitioners seek to stretch the boundaries of 28 U.S.C. § 1782 beyond all permissible limits, seeking vast asset and corporate organization and financial discovery from 18 banks and multiple corporate affiliates, all concerning a contingent indemnity claim in London arbitration that is not yet even ripe for adjudication. This is a premature fishing expedition in the extreme, and this Court should not countenance such abuse of the discovery privileges granted by § 1782.

In the first place, Petitioners' indemnity claim, relating to a claim against Seawolf concerning the ocean carriage of a cargo of petroleum products that has only just been filed against it in New York and which is a long way away from resulting in any concrete liability on Petitioners' part, is subject to London arbitration. The law of this Circuit is very clear that a party may not use § 1782 to obtain discovery in aid of a foreign private commercial arbitration. Moreover, inasmuch as this claim concerns potential future indemnity in respect of claims against them, it is not yet even ripe for adjudication and may not be for quite some time, if ever.

Petitioners claim they need the discovery in aid of pending vessel arrest proceedings in the United Arab Emirates, but such asset-search discovery should not be available under § 1782, particularly where it represents an attempt to end-run the prohibition against discovery in aid of foreign arbitration. In any event, Petitioners fundamentally misstate the nature and scope of the dispute in the arrest proceeding, incorrectly contending that it concerns factual issues of alter ego and corporate veil piercing. This is incorrect; in fact, the dispute centers around the far more limited question whether a vessel owned by one registered owner can be arrested as security for claims against another registered owner where both companies are commonly owned in a "group"

by a corporate parent. This is purely a legal dispute and could not turn on any discovery available in this jurisdiction.

Petitioners also state that they require the discovery to support a planned action in the Marshall Islands; however, their contention that they will seek an injunction is moot inasmuch as the relevant vessels have already been sold in the ordinary course. And any suggestion that Petitioners might be able to place any entity into receivership in respect of their claims ignores the very high legal burden which they candidly concede they would have to show, but which they have failed to demonstrate in their application here.

Simply put, this discovery application is one part fishing expedition and one part harassment; this Court should not be a party to such wild, invasive and grossly premature asset searching efforts where it is far from clear that there will ever even be a ripe claim on the merits; much less that Petitioners might ultimately prevail. Accordingly, Petitioners should be denied relief under § 1782 and all subpoenas should be quashed.

## FACTS

Ridgebury Kilo LLC ("Owner") was the registered owner of the tanker vessel RIDGEBURY PROGRESS ("PROGRESS"). PROGRESS was on time charter to petitioner Seawolf pursuant to a charter party dated July 31, 2015 (the "Headcharter"), and it was entered in a vessel pool agreement with Seawolf and Heidmar also dated July 31, 2015. Under that agreement, PROGRESS was entered into a vessel pool with other vessels also on charter to Seawolf and under commercial management by Heidmar. At all relevant times PROGRESS was insured for protection and indemnity risks (*i.e.*, third-party liability claims) with the Standard Club, which is a member of the International Group of P&I Clubs.

Seawolf subchartered PROGRESS to Laurel Shipping Inc. pursuant to a voyage charter party dated November 20, 2019 for the carriage of petroleum products (the "Subcharter").

2

Disputes arose under that charter, and on or about July 7, 2020 Seawolf commenced an action in the District Court for the Southern District of New York against Laurel, asserting various claims under the charter and seeking damages and a maritime attachment pursuant to Rule B of the Supplemental Admiralty Rules of Procedure. (*Seawolf Tankers v. Laurel Shipping*, 1:20-cv-05198 (RA); the "Laurel Action")). On July 22, 2020, Laurel's counsel sent Petitioners' counsel a demand letter in respect of alleged "market loss" damages on a cargo of crude petroleum products carried aboard PROGRESS, in the amount of approximately $17 million, plus $2.7 million in other "logistical expenses in connection with the need to dispose of the product." (Power Dec. Ex. 5, Dkt No. 4-3).

In response to Laurel's demand letter, on July 29, 2020 Petitioners commenced a vessel arrest action in the United Arab Emirates against M/V RIDGEBURY PURPOSE ("PURPOSE"), whose registered owner was Ridgebury Mike LLC. As more fully described in the accompanying declaration of Omar N. Omar, lead counsel for Ridgebury Mike in the UAE proceedings, Petitioners alleged in that arrest action that Ridgebury Mike is a single-purpose company; that it and Ridgebury Kilo, registered owner of PROGRESS, are both owned by the same corporate parent company; and that, accordingly, PURPOSE should be subject to arrest to stand as security for Petitioner's claims against Ridgebury Kilo relating to PROGRESS because they are in the same "group" of companies. In support of its application, Petitioner's submitted an "expert report" of Captain Mohammed Matar Al Mehairi which purports to analyze the corporate affiliation of Ridgebury Kilo and Ridgebury Mike and ultimately contends as follows:

> According to the maritime commercial custom, the companies that are members of the same group are responsible for all debts owed from any of them. Therefore, my company and Seawolf Tankers Inc., Heidmar Inc. have the right to request the applying precautionary seizure on the ships owned by this

3

> Group to meet the value of the excellent maritime
> debt on the ship Progress.

*See* Omar Declaration Ex. A (English translation).

On August 8, 2020, Ridgebury Mike filed a Grievance Application before the Fujiarah Federal Court of the First Instance, objecting to the arrest and posting a bank guaranty in favor of the Petitioners in the amount of AED 72,397,500 (roughly $19.7 million), subject to its right to challenge the arrest. (Omar Dec. Ex. B). In its opposition to the arrest, Ridgebury Mike raises several objections. Of relevance for present purposes, it does not dispute as a matter of fact that Ridgebury Mike and Ridgebury Kilo are both separate legal entities that are owned by the same corporate parent; rather, it challenges as a matter of UAE law that one such company's vessel can be arrested to secure claims against another separately registered company in the same such group of companies. (See Omar Dec. ¶¶ 8 to 10). The Grievance Action action remains pending, with Petitioners currently scheduled to submit their opposition to Ridgebury Mike's objections on September 15, 2020.

Meantime, on August 2, 2020, Seawolf demanded arbitration of Owner in London pursuant to the terms of the Headcharter, seeking indemnification for any amounts for which they may be liable to Laurel. Owner has, just today, appointed its arbitrator in response to Petitioners' arbitration demand.

On August 19, 2020, Laurel filed a counterclaim in the Laurel action claiming damages of $18 million in connection with the claim asserted in their July 22 demand letter. (*Laurel Action* at Dkt No. 21). No substantive steps have occurred either in the Laurel Action nor the London arbitration.

On August 22, 2020, Ridgebury Mike concluded a long-contracted sale of the PURPOSE. (Kimball Dec. Ex. B). PROGRESS had previously been sold in June 2020. (Kimball Dec. Ex. A).

On August 21, 2020, Petitioners commenced an *ex parte* application in the Southern District of New York pursuant to 28 U.S.C. § 1782 seeking discovery from 18 banks who serve as correspondent banks for international wire transfers un U.S. dollars. (*In re Application of Seawolf Tankers et al.*, 1:20-mc-00299 (S.D.N.Y.)(PKC); the "NY Action"). They seek, *inter alia*, two full years of records relating to every wire transfer to, from, or referencing 16 different corporate entities and vessels within the Ridgebury "group." (See Kimball Dec. Ex. C for representative example bank subpoena). Additionally, they sought to subpoena Riverstone Holdings LLC with only the vaguest of allegation about how that entity might relate to Petitioners' claims against Owner in this matter. *See* Power Dec., Dkt No. 4, ¶32.

Although Petitioners were already in direct communication with counsel for Ridgebury Mike in connection with the UAE arrest proceedings and with Owner's London solicitors in connection with the London arbitration, Petitioners at no time provided either with any notice that this action had been filed or that extensive *ex parte* discovery orders were being sought. Owner only learned of this action by pure chance, and Owner's counsel filed notices of appearance in the matter on August 25, 2020. (NY Action, Dkt Nos. 8 and 9). Before Owner had an opportunity to submit any objection to the *ex parte* application, however, on August 26, 2020 the Court issued its Order Granting *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782. (NY Action, Dkt. 10). On August 27, 2020 Owner filed a Letter Motion asking the Court to stay its order and set a briefing schedule for Owner's opposition to the application, (NY Action, Dkt No. 11); however, on August 28, 2020 the Court denied that application "without prejudice to the right of

5
151449.06500/123793619v.1

any party or non-party to assert their rights under Rule 45 and/or section 1782." (NY Action, Dkt. No 12).

Meantime, on August 24, 2020, Petitioners filed this action, also seeking a leave pursuant to § 1782 to serve document subpoenas upon five different corporate entities, as well as deposition subpoenas of two individuals, all within the Ridgebury group. Again, the application was filed *ex parte*, with no notice given to Owner – even after they had filed their notice of appearance in the parallel NY action. Here, however, Owner was able to file its letter requesting a briefing schedule to oppose the discovery application before the Court acted on the application. (Dkt. No. 13). In response, the Court scheduled a telephone conference for Friday August 28, 2020, at which the Court set a briefing schedule by which Owner would submit its opposition to the discovery application by September 3, 2020 and Petitioners would submit their reply by September 8, 2020. The Court also directed Petitioner to submit copies of its proposed subpoenas so that the Court could review the scope of the intended discovery requests. Petitioners complied with this request on August 31, 2020. (Dkt. No. 16).

## ARGUMENT

### POINT I

**RIDGEBURY KILO HAS STANDING TO CHALLENGE THE § 1782 DISCOVERY APPLICATION**

Although the proposed subpoenas are directed at third parties, Ridgebury Kilo, as the party against whom Petitioners actually claim and against whom this discovery is ultimately targeted, has legal standing to challenge the § 1782 Discovery Application and the scope and breadth of the subpoenas sought in this matter. As the Second Circuit has explained:

> We have recognized, though implicitly, that parties against whom the requested information will be used may have standing to challenge the lawfulness of

> discovery orders directed to third parties. *See In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017 (2d Cir. 1967) (quashing subpoenas directed to third-party witness on motion of party aggrieved by discovery order); *see also In re Request for Int'l Judicial Assistance*, 687 F. Supp. 880, 887 (S.D.N.Y. 1988) (finding that targets of foreign inquiry have standing to oppose § 1782 discovery order directed to third parties on grounds that documents were outside the statute's scope), *rev'd on other grounds*, 936 F.2d 702 (2d Cir. 1991) (no discussion of standing issue).

*Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997). *See also In re Hornbeam Corp.*, 2015 WL 13647606, *2 (S.D.N.Y. 2015)("Symeou is a "part[y] against whom the requested information will be used" and has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself."); *de Leon v. Clorox Co.*, 2020 WL 4584204, at *4 (N.D. Cal. 2020)("…the ultimate targets of a § 1782 discovery order issued to third parties have 'standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute.'").[1]

## POINT II

**PETITIONER IS NOT ENTITLED TO DISCOVERY FOR USE IN THE LONDON ARBITRATION ON ITS UNRIPE CONTINGENT INDEMNITY CLAIM**

The Second Circuit reaffirmed in *In re Guo*, 965 F.3d 96 (2d Cir. 2020), that § 1782 may not be used to obtain discovery for use in a private foreign arbitration. Here, Petitioners candidly concede that the primary claim – *i.e.*, on the merits of the dispute, which concerns the carriage of a cargo of petroleum aboard a vessel pursuant to a charter party – is subject to a pending arbitration

---

[1] Ridgebury Kilo's standing to challenge the Discovery Order and the subpoenas is additional to, and not in place of, the right of any target of Petitioners' subpoenas to directly challenge such subpoena on whatever grounds may be available to that party. *See Sarrio* ("This does not mean that standing to oppose subpoenas issued under § 1782 is limited to the subpoenaed witness.").

151449.06500/123793619v.1

in London. *In re Guo* unequivocally establishes that Petitioners are not entitled to seek discovery under § 1782 "for use in" the arbitration.

In fact, the arbitration itself is premature. Petitioners' claim, a contingent claim for indemnity in respect of Seawolf's potential eventual liability to a third party in litigation which has only just been commenced against it in the Southern District of New York relating to the carriage of this same cargo, is not even yet ripe under English law. *See e.g., Bottiglieri Di Na Vigazione SpA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. 2007), *aff'd*, 293 Fed. Appx. 36 (2d Cir. 2008)(recognizing that contingent charter party indemnity claim was unripe under English law and therefore could not constitute a "*prima facie* admiralty claim" which could support a Rule B maritime attachment). Thus, this claim is a particularly thin reed upon which to base broad and sweeping discovery requests in this District relating to Owner's and its affiliates' assets and corporate and transactional records.

Petitioners seek to end-run this clear bar by contending that the discovery they seek has nothing to do with the London arbitration but is solely intended to support their pending arrest action in the UAE and an "anticipated" action in the Marshall Islands. The Marshall Islands "action" is purely speculative at this point, however, and neither it nor the UAE arrest action is an "adjudicative proceeding" which can separately support the request for discovery here. In *Europema S.A. v. R. Esperian, Inc.*, 154 F.3d 24 (2d Cir. 1998), for instance, the Second Circuit held that a French bankruptcy proceeding was not an "adjudicative proceeding" within the meaning of the statute because "[t]he merits of the dispute between [the parties] have already been adjudicated and will not be considered in the French Bankruptcy Proceeding." *Id*. at 28. Following *Europema*, the District Court in *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, 2015 WL

3439220 (S.D.N.Y. 2015), rejected an application for discovery in aid of attachment proceedings incidental to the dispute on the merits:

> Jiangsu does not seek this discovery in order to help decide the "merits of the dispute" between it and SSL; it wants the information about SSL's and Mingli's assets so it can easily obtain advance security for such a judgment … or enforce whatever judgment it might obtain in the as-yet-to-be brought London arbitration. <u>However, neither pre-judgment attachment nor post-judgment enforcement proceedings are "adjudicative" in nature</u>; indeed, the latter is the explicit holding of *Euromepa*, and if an enforcement proceeding is not adjudicative in nature, I fail to see (and Jiangsu does not suggest) how a pre-judgment security proceeding could possibly so qualify.[2] [Emphasis added.]

The Court in *In re Application of Gorsoan Ltd.*, 435 F. Supp. 3d 589 (S.D.N.Y. 2020), distinguished *Jiangsu* by noting that the petitioner's discovery request there was not just "a collection action" because the discovery could also impact the adjudication of the underlying merits in the main Cyprus proceeding. *Id*. at 599. That distinction, however, cuts directly against the Petitioners here, for the simple reason that *Gao* explicitly confirms this Circuit's prohibition against using § 1782 to seek discovery in aid of the English arbitration, where the merits of this dispute will eventually be litigated. Second and no less relevant, moreover, is the simple fact that even a cursory review of the actual discovery sought underscores the fact that it has no relevance whatsoever to the underlying cargo claim but relates solely to Petitioner's premature search for assets and corporate records.

*Petition of Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701 (S.D.N.Y. 2015), as here, involved contingent indemnity claims by a vessel charterer against the owner relating to pending

---

[2] The *Jiangsu* court considered the question whether *Euromepa* "is still good law" and concluded, with detailed analysis, "that it is." Id. at *4.

9

cargo claims against the charterer. The petitioner there sought subpoenas of 16 New York banks, seeking to identify assets against which to enforce an anticipated arbitration award and/or judgment and to support a possible indemnity claim against the owner in the event the charterer were to incur liability in respect of the cargo claims. In considering the application, the court found that "[p]etitioner has failed to establish that the discovery it seeks is 'for use in a foreign proceeding' within the meaning of the statute." *Id*. at 705. It further held, moreover, that even if the petitioner had satisfied the requirements of § 1782, the Court nevertheless would exercise its discretion to deny the petition "because it is an overly broad fishing expedition that does nothing to further the twin aims of the statute." The Court explained:

> Far from being an efficient means of assistance to participants in international litigation, the subpoenas would direct sixteen large banks to conduct broad searches for information when the Petitioner has provided no basis to believe that Arma ever transacted business through any particular bank. That is too great a burden to impose on non-parties, particularly on an *ex parte* basis. The Court seriously doubts that this is the example Congress intended to set by authorizing discovery pursuant to § 1782.

*Id*. at 705.

The *Asia Maritime* court further noted in a footnote to the above that "The Southern District of New York has attracted a number of similar *ex parte* requests in which the petitioners are purporting to locate financial information "for use" in a foreign proceeding but are in reality seeking discovery to determine whether to initiate a proceeding." *Id*. at n. 6 (citing cases). This is just such a case, and Petitioners' efforts go well beyond the intended purpose of § 1782 and should be rejected.

*In re Ex Parte Petition of Shagang Shipping Co., Ltd.*, 2014 WL 1744264 (S.D.N.Y. 2014), is another case where the Court denied a § 1782 application for discovery of documents not

10

relevant to the merits of a pending dispute but related solely to matters of enforcement of a still-pending claim:

> Shagang seeks the information requested in the Subpoenas for an issue related to damages in the London Action, and pre-judgment discovery concerning an opposing party's assets "is not permitted ... unless it is relevant to the merits of a claim.... <u>Rather, such discovery is properly reserved for postjudgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment</u>." *Sequa Corp. v. Gelmin*, 91 Civ. 8675(DAB), 1995 U.S. Dist. LEXIS 9338, at *6 (S.D.N.Y. 1995). (Emphasis added).

Petitioner's request for discovery here should be similarly rejected.

## POINT III

## PETITIONER DOES NOT NEED THE DISCOVERY FOR USE IN THE UAE TO SUPPORT ITS ARREST CLAIM

In contending that they need the requested discovery "for use in" the UAE arrest action, Petitioners ignore the very limited grounds they have alleged as the basis for their arrest in that proceeding, and they also ignore the legal basis for Ridgebury Mike's challenge. As is fully detailed in the Omar Declaration, the actual issue in dispute in the arrest action is whether, as a matter of law, a claimant may arrest a vessel belonging to one registered owner in respect of a claim against a different registered owner on the basis that the vessels are "sisterships" within the same "group" of companies. This is clear from Petitioners' own expert submission in the UAE arrest proceeding, which is quite explicit about what they consider to be the grounds for the arrest, namely that:

> <u>According to the maritime commercial custom, the companies that are members of the same group are responsible for all debts owed from any of them</u>. Therefore, my company and Seawolf Tankers Inc., Heidmar Inc. have the right to request the applying

11

> precautionary seizure on the ships owned by this Group to meet the value of the excellent maritime debt on the ship Progress. [English translation; emphasis added.]

There is no "alter ego" or "corporate veil piercing" issue before the UAE Court. As the Omar Declaration makes clear, no such allegations are made in the UAE action, and no such claim would even be entertained as a matter of UAE law. (Omar Dec. ¶ 5).

The issue that actually is before the UAE Court is purely a question of law. The fact that PROGRESS and PURPOSE are each owned by registered owners that are themselves under the common ownership of a corporate parent is not in dispute, and the resolution of whether an arrest is permitted on this basis is purely a matter of UAE law. No additional facts need be established to resolve this question, and no discovery could generate any documents or records that would alter the outcome of this dispute. (See Omar Dec. ¶¶ 8-10). Indeed, as explained in the Omar Declaration, the UAE Court would not entertain additional factual submissions at this stage of the proceedings in any event. (Omar Dec. ¶ 5).

## POINT IV

### PETITIONERS' PURPORTED MARSHALL ISLANDS ACTION FOR INJUNCTION RELIEF OR RECEIVERSHIP IS SPECULATIVE AND MOOT

Petitioners' "anticipated" Marshall Islands action is also not a sufficient basis to support this premature and overly broad discovery sweep. In the first place, Petitioners' original purported basis for the action – that they would seek to "enjoin the dissipation of sale proceeds from the sale of the PURPOSE," (*See* Dkt. 5 at p. 8) – is moot because the vessel has already been sold. (*See* Kimball Dec. Ex. B). Petitioners may assert that it was wrongful for Ridgebury Mike to sell the PURPOSE and distribute proceeds at a time when it "knew" there was an outstanding claim against Ridgebury Kilo and the PROGRESS, but such argument ignores several critical facts: first,

12

Ridgebury Mike had just posted a bank guaranty of roughly $19.7 million in favor of Petitioners on this very claim; second, Petitioners' claim is not even against Ridgebury Mike; and third, even to this day Heidmar's statement of the pool account reflects several million dollars still due <u>to</u> Ridgebury Kilo and Ridgebury Mike in respect of receivables still to be collected and working capital. Petitioners cannot legitimately contend that Ridgebury Mike had some never-ending legal duty to put the sale of the PURPOSE on hold – which, under the sales contract with the buyer, it obviously would have had no right to do – or to indefinitely hold on to the sale proceeds – even while Petitioners are already holding full security and substantial funds on account – on the abstract chance that Petitioners' arrest action might be vacated and that Petitioners might someday, somewhere, be able to prove some right to get at the sales proceeds of the PURPOSE in respect of a contingent indemnity claim against a different legal entity that is not even ripe. Petitioners haven't just put the cart before the horse; they don't even have a horse yet!

Any contention that Ridgebury Kilo acted improperly in selling the PROGRESS in June 2020 – before any of these claims even arose – is equally disingenuous. And for the same reason as with the PURPOSE, any application for an injunction would be entirely moot inasmuch as the sale occurred months ago. Moreover, any suggestion of urgency is belied by the fact that Petitioners time chartered the PROGRESS from Ridgebury Kilo and voyage chartered it to Laurel for the voyage which gives rise to Laurel's claim here. Petitioners knew of the events, and Heidmar, as commercial manager, knew of the long-pending sale of the PROGRESS to a third-party upon the completion of that voyage.

Petitioners suggest they could make an application to appoint a receiver; however, they candidly acknowledge that to obtain such an order they would have to "make a clear showing that (1) an emergency exists and (2) that a receiver is necessary to protect the property interests of the

13

movant." (Dkt. 5, p. 9). Petitioners would equally have to show "probability of success in the action" and "irreparable harm," among other high threshold showings. Here, there is no "emergency" given that the sales have already occurred; there could not possibly be any "probability of success" given that Petitioners do not even have a ripe claim; and any allegation of "irreparable harm" is purely speculative and unsubstantiated.

To attempt to meet these high threshold bars to proceeding as they suggest in the Marshall Islands, Petitioners have come fishing in New York and Connecticut. But again, asset searching is far too speculative here where the Petitioners are miles away from even establishing that they have any actual liability to the sub-charterer Laurel – much less that Owner should eventually have any liability to Petitioners on their contingent indemnity claim. As discussed in Point II above, numerous courts in this Circuit have rejected § 1782 discovery applications in similar circumstances.

## POINT V

### THE COURT SHOULD EXERCISE ITS DISCRETION TO REJECT THE APPLICATION FOR DISCOVERY

The law is clear that this Court has discretion to reject the requested discovery even where all the conditions of § 1782 are strictly met. *In re Ex Parte Petition of Shagang Shipping Co., Ltd.*, 2014 WL 1744264, *2 (S.D.N.Y. 2014), for instance, the Court explained:

> However, "[o]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz* [*v. Bernstein, Liebhard & Lifshitz*], 376 F.3d [79 (2d Cir. 2004)] at 83–84. "[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095,

14

> 1101 n. 6 (2d Cir.1995); *see also In re an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir.1997) (noting that if a court "suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request" (citation omitted)).

In the present case, the Petitioners have come out guns-a-blazing – seeking a combined 25 subpoenas against various banks, corporate entities and individuals in the New York and Connecticut actions seeking detailed and invasive asset and financial discovery – in a case where they do not even presently have a ripe claim on the merits against Owner. Call it overbroad, call it speculative, call it a fishing expedition, or call it harassment; by any of those names it is still wholly improper, and this Court should reject Petitioners' application entirely.

## **CONCLUSION**

For the foregoing reasons, Ridgebury Kilo LLC respectfully submits that the Discovery Order should be vacated, the subpoenas issued pursuant to said order should be quashed, and Ridgebury Kilo should be granted such other and further relief as may be just and equitable.

Dated: September 3, 2020

        John D. Kimball
        Thomas H. Belknap, Jr.

        ___*/s/ John D. Kimball*___
        BLANK ROME LLP
        1271 Avenue of the Americas
        New York, New York 10020
        Telephone: (212) 885-5000
        Fax: (212) 885-5001
        jkimball@blankrome.com
        tbelknap@blankrome.com
        *Attorneys for Ridgebury Kilo LLC*